UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
:
EDWARD BOLDEN, JR. and JUWAN WILLIAMS, :
:
Plaintiffs, :
:
- against - : 21-CV-_____
:
: **COMPLAINT**
BROOKLYN NETS, LLC, :
: **JURY TRIAL DEMANDED**
:
Defendant. :
:
------------------------------------------------------------------ x

      Plaintiffs Edward Bolden Jr. ("Bolden") and Juwan Williams ("Williams") (collectively, the "Plaintiffs"), by and through their attorneys, Cerasia & Del Rey-Cone LLP and Equal Rights Law Group, for their Complaint against defendant Brooklyn Nets, LLC (the "Nets"), allege as follows:

## NATURE OF ACTION

      1.      Plaintiffs bring this lawsuit against the Nets to recover money damages, as well as declaratory, injunctive and equitable relief to redress the Net's unlawful race discrimination and retaliation in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.* ("Section 1981"), Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII")[1], the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"), and the New York City Human Rights Law, N.Y. City Administrative Code §§ 8-101 *et seq.* ("NYCHRL").

---

[1] Williams has filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), but has not yet received a notice of right to sue. He will file an Amended Complaint following his receipt of a notice of right to sue, and will assert race discrimination and retaliation claims under Title VII.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, because their Section 1981 claims and Bolden's Title VII claims arise under the laws of the United States.

3. This Court has supplemental jurisdiction over Plaintiffs' related state and local law claims pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## ADMINISTRATIVE PROCEDURES

5. Bolden filed a Charge of Discrimination with the EEOC and received a Notice of Right to Sue on August 18, 2021, and he is filing his Title VII claims within 90 days thereafter.

6. Following the commencement of this action, a copy of this Complaint will be served both on the New York City Commission on Human Rights and the Office of Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the NYCHRL.

## PARTIES

7. Bolden, a former Team Attendant with the Nets, currently resides in Yonkers, New York. At all relevant times herein, Bolden has met the definition of "employee" under all applicable statutes.

8. Williams, a former Team Attendant with the Nets, currently resides in Brooklyn, New York. At all relevant times herein, Williams has met the definition of "employee" under all applicable statutes.

9. The Nets is a domestic business corporation with a principal place of business located in Brooklyn, New York. At all relevant times herein, the Nets met the definition of "employer" under all relevant statutes.

## FACTUAL ALLEGATIONS

10. Bolden began his employment with the Nets in September 2014, when he was hired as a Ball Boy with the Nets.

11. Williams began his employment with the Nets in September 2012, when he was hired as a Ball Boy with the Nets.

12. Bolden and Williams steadily worked for the Nets and were eventually promoted to manager and then to co-Team Captain of the equipment team, which included responsibility for scheduling and overseeing other Team Attendants.

13. In 2017, as a recognition of his job performance, Bolden was invited out to Mexico City on behalf of the Nets and the National Basketball Association ("NBA") to assist with Global Games.

14. Bolden and Williams made great efforts to secure a full-time job with the Nets and expressed interest about new job openings within the Nets and for other NBA teams because they saw job postings for which they believed to be qualified. Their supervisor, Joe Cuomo, who is Caucasian, made it clear to Bolden and Williams that neither would progress beyond his Team Attendant position at the Nets. Cuomo, however, mentored and helped non-Black Team Attendants secure other positions within the Nets' organization or with other NBA teams.

15. Despite what they knew to be true, when the Plaintiffs expressed interest in a full-time role with the Nets, they were often told that there were no roles available. Yet, the Plaintiffs watched non-Black employees grow within the Nets' organization or get positions at other teams with Cuomo's help, while the Plaintiffs were relegated to the same part-time roles with the Nets.

16. Notably, during the relevant time period, all of the management roles with the Nets were occupied by Caucasian men.

17. The Nets had a successful season in 2019. That year, the Nets' Team Attendant staff was nominated as the best equipment staff in the NBA.

18. The 2019-2020 NBA season was cut short because of the COVID-19 pandemic. The Nets' last game of that season was on March 8, 2020, and that was the last day that Bolden and Williams would ever work at the Barclay Center – the Nets' arena.

19. Throughout the entirety of Bolden's employment, he was vocal about cultural racial disparities – specifically, around police brutality. Williams also participated in these discussions and was vocal on these issues. Whenever Bolden mentioned these issues in front of Cuomo, he received significant push-back. Cuomo also expressed his discontent when Williams and others, including NBA players, engaged in a peaceful form of protest against racism by wearing the hood on their hoodie before games.

20. Moreover, in early 2020, when several national events associated with the disparate treatment of Blacks and other people of color occurred around the country, a reaction was spawned in the NBA community. In response, professional athletes, including NBA players, took to various platforms to articulate their feelings on the topics, which dominated the American conscience, including on podcasts, in personal essays or on other media forums.

21. In a statement of peaceful protest to bring light to the strife facing many Blacks, a number of athletes chose to sit or kneel during the national anthem played directly before their sporting events. The Nets' players also were influenced by these societal issues facing Black Americans and discussed the same among themselves and with other Nets' staff.

22. Plaintiffs were among a group of employees that regularly took part in social justice conversations and the Black Nets' players gravitated toward them for mutual commiseration and

support.  Unfortunately, the players' voices on these issues were tolerated because of the power they held on the Nets, but Plaintiffs' voices were not.

23. Cuomo did not agree with the protests proffered by athletes, and he made his view known, privately and more publicly.  In one social media post regarding Marshawn Lynch, a National Football League running back who chose to sit while the National Anthem was played at his game, Cuomo commented:

> I disagree with both protests. While Lynch's right to protest is more civil, I feel like his message is eroded since he's disrespecting the flag in the process.

24. Cuomo further commented in the same thread as follows:

> If [Lynch] continues to sit and is open to the media about it like [Colin] Kappernick [sic], I think [Lynch] will be hated by a large portion of the general public.

25. In a further exchange with an individual on social media, Cuomo took a very dismissive approach telling an individual who was expressing concern with racial disparities the following:

> [W]hy bother to live in such a miserable country then?  That's what you are making it out to be.

26. Notably, Cuomo expressed such views on Bolden's personal social media account.

27. Cuomo also expressed to Bolden that he was uncomfortable with certain rap music by Black artists.

28. Cuomo did not approve of Plaintiffs having discussions regarding social justice at work and approached Bolden and Williams regarding the same.  Specifically, Cuomo instructed Bolden and Williams that they were not to engage in any communications regarding discrimination and social injustices against Blacks in America while at work.  Cuomo also explicitly told Bolden that he did not agree with the exercise of peaceful protest regarding the mistreatment of Blacks.

29. Cuomo specifically prohibited Bolden and Williams from speaking to any Nets players regarding ongoing racial inequities in the nation. Plaintiffs were surprised and dismayed that their supervisor was engaging in behavior in such a manner to quell their opposition to racism and their efforts to participate in actions in support of anti-racism in a setting that had become a safe haven for them in extremely stressful times.

30. As news of Cuomo's prohibition spread throughout the Nets staff, other Black employees were apprehensive about speaking out against disparate treatment toward the Black community.

31. On or about March 11, 2020, after a member of the Utah Jazz tested positive for COVID-19, the NBA decided to suspend the 2020 season. When the season resumed in July 2020, games were scheduled to be held in Orlando, Florida, in a sterilized environment referred to as the "Bubble."

32. As a result of the changes to where the games were held and other protocols, Bolden and Williams did not serve as Team Attendants in the Bubble.

33. On November 17, 2020, Cuomo texted Bolden and Williams separately and asked if they could speak. This was the first time that Cuomo had communicated with either Bolden or Williams since March 2020. Notably, tensions in the United States surrounding issues of racial inequity only worsened during those eight months.

34. That same morning, Bolden and Williams spoke separately with Cuomo, who informed each Plaintiff that he was relieving them of their duties as a Team Attendant. Cuomo did not provide Bolden or Williams with a reason for the decision and simply stated that he could not bring "you guys" (meaning Bolden and Williams) back. Thus, each Plaintiff's employment with the Nets ended that same day.

35. Plaintiffs were shocked by the decision as they had fulfilled all obligations in 2020 prior to the suspension of the NBA season and they were among the Nets' longest tenured Team Attendants. Nets' team members and other staff were equally stunned to learn that Bolden and Williams had been separated from their employment.

36. Bolden and Williams took the issue directly to the Nets' General Manager, Sean Marks ("Marks"), a Caucasian, to convey their concerns. On November 30, 2020, Marks told Bolden that he and Williams were a joy to be around and asked if he (Marks) could conduct an independent investigation into the termination decisions, including speaking to Cuomo.

37. On December 7, 2020, after not hearing anything further from Marks, Bolden reached out to him. Marks responded that Ryan Gisriel ("Gisriel"), a Caucasian and the Nets' Director of Basketball Operations, would contact Bolden.

38. When Gisriel contacted Bolden, he shared that, after the investigation and speaking to Cuomo, the terminations decisions were being upheld. Gisriel further shared that Cuomo justified the decisions not to have them employed going forward by labeling – for the first time – Bolden and Williams as "lazy" and stating they were unable to follow directions.

39. At no time during the entirety of Plaintiffs' employment were either ever told that he was perceived as "lazy" or unable to follow directions. Notably, Cuomo did not share that purported view with Bolden or Williams on the day he ended their employment with the Nets. In fact, at no point during their employment did Cuomo tell Bolden or Williams that they were "lazy," did not follow direction, or had been underperforming.

40. Upon information and belief, the Nets brought on at last one Caucasian Team Attendant after the Nets told the Plaintiffs that their employment would not be continued.

41. On information and belief, Cuomo or someone within the Nets organization retaliated against Bolden after the end of his employment with the Nets by seeking to blacklist

7

Bolden or prevent him from working for another NBA team. In fact, in late-September 2021, Bolden reached out to the equipment manager at another NBA team about working there as a team attendant. In response to Bolden's inquiry, the equipment manager for that NBA team stated in writing as follows: "Let me check with my GM over here. With the way stuff went down on your way out of Brooklyn I have to run this by the powers that be over here." Thereafter, Bolden never heard back from this equipment manager or NBA team.

42. The only "stuff" that "went down" when Bolden left the Nets is that, through his attorney at the Equal Rights Law Group, he complained about race discrimination and retaliation in connection with his employment at the Nets, including behavior by Cuomo. Consequently, Bolden reasonably believes that Cuomo or someone at the Nets retaliated against him by telling the other NBA team not to hire Bolden or at least expressed concerns to that NBA team about hiring him because of the fact that he had complained to the Nets about race discrimination and retaliation.

43. The deplorable and inexplicable conduct of the Nets demonstrated a willful and reckless disregard for Plaintiffs' rights under the applicable laws and caused each of them to lose wages and benefits and to suffer humiliation, embarrassment, pain and suffering, as well as damage to each Plaintiff's reputation.

**FIRST CAUSE OF ACTION**
**Race Discrimination in Violation of Section 1981**

44. Plaintiffs incorporate herein by reference the preceding paragraphs as if fully set forth herein in their entirety.

45. The Nets discriminated against Plaintiffs on the basis of their race in violation of Section 1981 by denying each of them equal terms and conditions of employment as described above, including, but not limited to, subjecting them to harassment and by terminating their employment and not permitting them to continue with that employment.

46. As a direct and proximate result of the Nets' unlawful discriminatory conduct in violation of Section 1981, each Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which each Plaintiff is entitled an award of monetary damages.

47. As a direct and proximate result of the Nets' unlawful discriminatory conduct in violation of Section 1981, each Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, embarrassment, humiliation, stress and anxiety and emotional pain and suffering for which each Plaintiff is entitled to an award of monetary damages.

48. The Nets' unlawful and discriminatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure the Plaintiffs, and was done with conscious disregard of their rights under the law, entitling each Plaintiff to an award of punitive damages.

**SECOND CAUSE OF ACTION**
**Retaliation in Violation of Section 1981**

49. Plaintiffs incorporate herein by reference the preceding paragraphs as if fully set forth herein.

50. The Nets have retaliated against the Plaintiffs by, *inter alia*, subjecting them to harassing treatment and by terminating or not renewing their employment for their opposition to discriminatory practices directed toward Black people, in violation of Section 1981.

51. As discussed above, the Nets have engaged in post-employment retaliation against Bolden.

52. As a direct and proximate result of the Nets' unlawful retaliatory conduct in violation of Section 1981, each Plaintiff has suffered and continues to suffer monetary and/or

economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which each Plaintiff is entitled an award of monetary damages.

53. As a direct and proximate result of the Nets' unlawful retaliatory conduct in violation of Section 1981, each Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, embarrassment, humiliation, stress and anxiety and emotional pain and suffering for which each Plaintiff is entitled to an award of monetary damages.

54. The Nets' unlawful and retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure the Plaintiffs, and was done with conscious disregard of their right under the law, entitling each Plaintiff to an award of punitive damages.

**THIRD CAUSE OF ACTION**
**Race Discrimination in Violation of the NYSHRL**

55. Plaintiffs incorporate herein by reference the preceding paragraphs as if fully set forth herein.

56. The Nets have has discriminated against the Plaintiffs on the basis of their race in violation of the NYSHRL by denying each of them the equal terms and conditions of employment, subjecting each of them to harassment and terminating their employment or not renewing their employment.

57. As a direct and proximate result of the Nets' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiffs have suffered, and continues to suffer, monetary and/or economic harm, for which each Plaintiff is entitled to an award of monetary damages.

58. As a direct and proximate result of the Nets' unlawful discriminatory conduct in violation of the NYSHRL, each Plaintiff has suffered, and continues to suffer, severe mental anguish and emotion distress including, but not limited to, embarrassment, humiliation, stress and

anxiety and emotional pain and suffering for which each Plaintiff is entitled to an award of monetary damages.

59. The Nets' unlawful and discriminatory conduct constitutes a willful and wanton violation of the NYSHRL, was outrageous and malicious, was intended to injure the Plaintiffs, and was done with conscious disregard of their right under the law, entitling each Plaintiff to an award of punitive damages.

**FOURTH CAUSE OF ACTION**
**Retaliation In Violation of the NYSHRL**

60. Plaintiffs incorporate herein by reference the preceding paragraphs as if fully set forth herein.

61. The Nets have retaliated against the Plaintiffs by, *inter alia*, subjecting them to harassing treatment and by terminating their employment or not renewing their employment for their opposition to discriminatory practices directed toward Black people, in violation of the NYSHRL.

62. As discussed above, the Nets have engaged in post-employment retaliation against Bolden.

63. As a direct and proximate result of the Nets' unlawful retaliatory conduct in violation of the NYSHRL, each Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which each Plaintiff is entitled to an award of monetary damages and other relief.

64. As a direct and proximate result of the Nets' unlawful retaliatory conduct in violation of the NYSHRL, each Plaintiff has suffered, and continues to suffer, severe mental anguish and emotion distress including, but not limited to, embarrassment, humiliation, stress and anxiety and emotional pain and suffering for which each Plaintiff is entitled to an award of monetary damages.

65. The Nets' unlawful and retaliatory conduct constitutes a willful and wanton violation of the NYSHRL, was outrageous and malicious, was intended to injure the Plaintiffs, and was done with conscious disregard of their right under the law, entitling each Plaintiff to an award of punitive damage.

**FIFTH CAUSE OF ACTION**
**Race Discrimination in Violation of the NYCHRL**

66. Plaintiffs incorporate herein by reference the preceding paragraphs as if fully set forth herein.

67. The Nets have has discriminated against the Plaintiffs on the basis of their race in violation of the NYCHRL by treating them less well because of their race, denying each of them the equal terms and conditions of employment, subjecting them to harassment and terminating their employment or not renewing their employment.

68. As a direct and proximate result of the Nets' unlawful discriminatory conduct in violation of the NYCHRL, each Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which each Plaintiff is entitled to an award of monetary damages and other relief.

69. As a direct and proximate result of the Nets' unlawful discriminatory conduct in violation of the NYCHRL, each Plaintiff has suffered, and continues to suffer, severe mental anguish and emotion distress including, but not limited to, embarrassment, humiliation, stress and anxiety and emotional pain and suffering for which each Plaintiff is entitled to an award of monetary damages.

70. The Nets' unlawful and discriminatory conduct constitutes a willful and wanton violation of the NYCHRL, was outrageous and malicious, was intended to injure the Plaintiffs, and was done with conscious disregard of their right under the law, entitling each Plaintiff to an award of punitive damages.

## SIXTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL

71. Plaintiffs incorporate herein by reference the preceding paragraphs as if fully set forth herein.

72. The Nets have retaliated against the Plaintiffs by, *inter alia*, treating them less well because of their protected activity, subjecting them to harassing treatment and by terminating their employment or not renewing their employment for their opposition to discriminatory practices toward Black people, in violation of the NYCHRL.

73. As discussed above, the Nets have engaged in post-employment retaliation against Bolden.

74. As a direct and proximate result of the Nets' unlawful retaliatory conduct in violation of the NYCHRL, each Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which each Plaintiff is entitled to an award of monetary damages and other relief.

75. As a direct and proximate result of the Nets' unlawful retaliatory conduct in violation of the NYCHRL, each Plaintiff has suffered, and continues to suffer, severe mental anguish and emotion distress including, but not limited to, embarrassment, humiliation, stress and anxiety and emotional pain and suffering for which each Plaintiff is entitled to an award of monetary damages.

76. The Nets' unlawful and retaliatory conduct constitutes a willful and wanton violation of the NYCHRL, was outrageous and malicious, was intended to injure the Plaintiffs, and was done with conscious disregard of their right under the law, entitling each Plaintiff to an award of punitive damage.

### SEVENTH CAUSE OF ACTION
### Race Discrimination Against Bolden in Violation of Title VII

77. Bolden incorporates herein by reference the preceding paragraphs as if fully set forth herein in their entirety.

78. The Nets discriminated against Bolden on the basis of his race in violation of Title VII by denying him the same terms and conditions of employment as described above, including, but not limited to, denying him equal treatment, subjecting him to harassing behavior and by terminating his employment and not permitting him to continue with that employment.

79. As a direct and proximate result of the Nets' unlawful discriminatory conduct in violation of Title VII, Bolden has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages.

80. As a direct and proximate result of the Nets' unlawful discriminatory conduct in violation of Title VII, Bolden has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, embarrassment, humiliation, stress and anxiety and emotional pain and suffering for which he is entitled to an award of monetary damages.

81. The Nets' unlawful and discriminatory conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Bolden, and was done with conscious disregard of his rights under the law, entitling him to an award of punitive damages.

### EIGHTH CAUSE OF ACTION
### Retaliation Against Bolden in Violation of Title VII

82. Bolden incorporates herein by reference the preceding paragraphs as if fully set forth herein.

83. The Nets have retaliated against Bolden by, *inter alia*, subjecting him to harassing treatment, by terminating or not renewing his employment for his opposition to discriminatory

practices toward Black people and by taking action to prevent another NBA team from hiring him, in violation of Title VII.

84. As a direct and proximate result of the Nets' unlawful retaliatory conduct in violation of Title VII, Bolden has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages.

85. As a direct and proximate result of the Nets' unlawful retaliatory conduct in violation of Title VII, Bolden has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, embarrassment, humiliation, stress and anxiety and emotional pain and suffering for which he is entitled to an award of monetary damages.

86. The Nets' unlawful and retaliatory conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Bolden, and was done with conscious disregard of his rights under the law, entitling him to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor and against the Nets, and grant to them the following relief:

a. A declaratory judgment that the actions, conduct and practices of the Nets complained of herein violate the laws of the United States and the State and City of New York;

b. An injunction and order permanently restraining the Nets from engaging in such unlawful conduct;

c. An order directing the Nets to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect the Plaintiffs' employment and personal life, including reinstatement of each Plaintiff;

  d. An award for all economic damages to be determined at trial, plus pre-judgment interest, to compensate each Plaintiff for the Nets' unlawful conduct, including back pay, front pay and lost benefits;

  e. An award for all compensatory damages to be determined at trial, plus pre-judgment interest, to compensate each Plaintiff for future pecuniary losses, emotional distress, pain, suffering, inconvenience, mental anguish, stress, anxiety, humiliation, embarrassment, loss of enjoyment of life and other nonpecuniary losses as allowable;

  f. An award to Plaintiffs for punitive damages;

  g. An award to Plaintiffs for the costs incurred in this lawsuit, together with reasonable attorneys' fees; and

  h. Such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues of fact, their claims and damages herein.

Dated: New York, New York
   November 15, 2021

CERASIA & DEL REY-CONE LLP

By *(signature: Edward Cerasia II)*
 Edward Cerasia II
150 Broadway, Suite 1517
New York, New York 10038
646.525.4231
ed@cdemploymentlaw.com

Mika Hilaire (to be admitted *pro hac vice*)
EQUAL RIGHTS LAW GROUP
15233 Ventura Boulevard, Suite 420
Sherman Oaks, California 91403
818.305.6297
mika@equalrightslawgroup.com

Attorneys for Plaintiffs

16